The Honorable Ronald B. Leighton

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON
# TACOMA DIVISION

| | |
|---|---|
| GROUND ZERO CENTER FOR NONVIOLENT ACTION, WASHINGTON PHYSICIANS FOR SOCIAL RESPONSIBILITY, and GLEN S. MILNER, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF THE NAVY, et al., <br><br> Defendants. | Case No. 3:12-cv-05537-RBL <br><br> Hon. Ronald B. Leighton <br><br> **DEFENDANTS' MOTION REQUESTING THAT THE COURT MAKE ADDITIONAL FINDINGS** <br><br> NOTE ON MOTION CALENDAR: August 7, 2020 |

Defs' Motion Requesting that the Court
Make Additional Findings
No. 3:12-cv-05537

U.S. Department of Justice
999 18th St., S. Terrace – Suite 370
Denver, CO 80202
(303)844-1376

## INTRODUCTION

Defendants respectfully request the Court make additional findings and issue an order comporting with the Ninth Circuit's June 27, 2017 order. *See Ground Zero Center for Non-Violent Action v. United States Dep't of the Navy*, 860 F.3d 1244 (9th Cir. 2017). In that order, the Ninth Circuit held that the standard applied by the Court in issuing protective orders to prevent the dissemination of sensitive information bearing on national security was too lenient and instructed the Court to follow a "compelling reason" standard. *See id.* at 1261. Accordingly, the Ninth Circuit vacated the Court's orders of November 9, 2012 (ECF No. 50) and July 29, 2013 (ECF No. 84), which restricted the public dissemination of certain documents, and remanded with instructions for further proceedings. Prior to and after issuance of the Court's April 23, 2020 Order, the parties met in an effort to narrow the number of documents in dispute, but have not been able to do so. In order to bring this matter to a close, Defendants request that the Court make additional findings regarding the documents subject to the prior orders and order that the documents remain protected from disclosure.[1]

## BACKGROUND

In the course of preparing an administrative record for Plaintiffs' National Environmental Policy Act ("NEPA") claims challenging the Navy's approval of the construction of an Explosives Handling Wharf on Naval Base Kitsap at Bangor, Silverdale, Washington, Defendants inadvertently produced sensitive information bearing on national security concerns. The documents that were inadvertently produced contain information that is protected from disclosure by status as Unclassified Controlled Nuclear Information ("UCNI"), *see* 10 U.S.C.

---

[1] Notwithstanding the Ninth Circuit's vacatur of the November 9, 2012 and July 28, 2013 orders, the Ninth Circuit did not order the immediate release of the documents subject to those orders, and it is the Defendants' understanding that the Ninth Circuit intended for additional proceedings to occur in order for the Court to decide how the documents should be treated moving forward.

DEFS' MOTION REQUESTING THAT THE COURT
MAKE ADDITIONAL FINDINGS
NO. 2:12-CV-05537
- 1 -

U.S. DEPARTMENT OF JUSTICE
999 18TH ST., S. TERRACE – SUITE 370
DENVER, CO 80202
(303)844-1376

§128, Critical Infrastructure Security Information ("CISI"), *see* 10 U.S.C. §130e, or information protected by the Arms Export Control Act, *see* 10 U.S.C. §130 (collectively, CUI).  On November 9, 2012, at Defendants' request, the Court issued an order requiring that certain documents in the Navy's administrative record not be disseminated, not be discussed in a public hearing, and that the disks containing the documents be returned to the Navy in exchange for properly redacted copies.  *See* November 9, 2012 Order at 1-2 (ECF No. 50).  The Plaintiffs sought to remove the restrictions in the Court's order, and Defendants' opposed Plaintiffs' request.  *See* Defs.' Opp. to Pls.' Mot. to Unseal Records and to Lift Restraints on Use of Records ("Opp. to Mot. to Unseal"), ECF No. 55.[2]

After a hearing, the Court permitted Plaintiffs to keep the documents for the sole purpose of appealing their first-amendment claims.  *See* Transcript of Portions of Hearing Dealing with Motion to Unseal ("Transcript"), December 7, 2012, at 27:25-28:15 (transcript issued on December 19, 2012).  *See also* July 29, 2013, Order (ECF No. 84).  The Court sealed the documents at issue prohibiting Plaintiffs from disseminating or further referencing in the litigation the information that the Navy inadvertently disclosed.  *See* July 29, 2013 Order (ECF No. 84).[3]  Plaintiffs appealed that ruling along with the Court's merits ruling on the NEPA claims.  On the First Amendment issue, the Ninth Circuit held that, in order to prevent the release

---

[2] Defendant's opposition to Plaintiffs' motion to unseal provides "compelling reasons" as to why the information contained in the specific documents at issue is protected from disclosure and that the public dissemination of that information could have significant adverse effects on public health and safety or national security.  This motion summarizes Defendants' aforementioned Opposition Motion while demonstrating the continued necessity for the information to be protected from disclosure.

[3] The Court originally protected 12 documents from disclosure.  *See* Nov. 9, 2012 Order at 1-2; *see also* Transcript at 31-32 (identifying an additional document protected by the Court's order: EHW 74344 – EHW 74350).  Per the agreement of the parties, the Court subsequently released one of those documents and portions of another documents from the protections of the order. *See* July 29, 2013 Order at 1.

DEFS' MOTION REQUESTING THAT THE COURT
MAKE ADDITIONAL FINDINGS
NO. 2:12-CV-05537
- 2 -

U.S. DEPARTMENT OF JUSTICE
999 18TH ST., S. TERRACE – SUITE 370
DENVER, CO  80202
(303)844-1376

of the documents, the Navy was required to demonstrate a "compelling reason [to impose the restriction] and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Ground Zero*, 860 F.3d at 1261-62 (quoting *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, (9th Cir. 2006) (quoting *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)). Further, the Court was required to make specific findings as to whether the Navy had met that standard. *Ground Zero*, 860 F.3d at 1262. Those findings "must be justified by specific facts showing that disclosure of particular documents would harm national security." *Id.* The Ninth Circuit made no finding as to whether the information that had been offered by the Navy in its prior declarations was sufficient to meet that standard—instead, the Ninth Circuit's order was focused on whether the Court had applied the proper standard and made the required factual findings to support its rulings. The Ninth Circuit remanded the case for the Court to make those findings.

In this motion, we summarize the compelling reasons and facts showing that disclosure of these particular documents would harm public health and safety or national security.

## ARGUMENT

The information in the Navy's administrative record that was inadvertently released is protected from disclosure under the applicable statutes as UCNI, CISI, or information subject to the Arms Control Export Control Act. UCNI is information which, if disseminated, could "have a significant adverse effect on the health and safety of the public or the common defense and security" due to the potential increased risk of the "illegal production of nuclear weapons" or the "theft, diversion, or sabotage of special nuclear materials, equipment, or facilities." 10 U.S.C. §

DEFS' MOTION REQUESTING THAT THE COURT
MAKE ADDITIONAL FINDINGS
NO. 2:12-CV-05537

U.S. DEPARTMENT OF JUSTICE
999 18TH ST., S. TERRACE – SUITE 370
DENVER, CO 80202
(303)844-1376

- 3 -

128(a)(2)(A)-(B).  CISI[4] (which is now referred to by the Department of Defense as Defense Critical Infrastructure Information or "DCRIT") is information that, if disclosed, "would reveal vulnerabilities in Department of Defense critical infrastructure that, if exploited, would likely result in the significant disruption, destruction, or damage of or to Department of Defense operations, property, or facilities."  10 U.S.C. §130e.  Finally, "technical data with military or space application" subject to the Arms Export Control Act, 22 U.S.C. §2751 *et seq.*, is protected from public disclosure.  10 U.S.C. §130(a).

In the prior proceedings before this Court, the Navy demonstrated that the inadvertently disclosed information falls under the protections of one or more of those statutes when this issue first arose in this Court.  *See* Opp. to Mot. to Unseal; Declaration of Richard T. Adams ¶¶ 9-10, 17-19, ECF No. 55-1; Declaration of Thomas J. Dargan ¶ 12, ECF No. 55-2.  In order to ensure that the information in the documents still needed to be protected from disclosure, the Navy recently reviewed the affected documents, and determined the information continues to be subject to one or more of the statutory provisions and that public dissemination of the information could have significant adverse effects on public health and safety or national security.  *See* Declaration of Gary A. Hogue ¶¶ 3-7; Declaration of Michael K. Nortier ¶¶ 3-5.

The documents at issue fall into three general categories:  (1) copies of the Naval Sea Systems Command OP 5, Volume 1, Ammunition and Explosives Safety Ashore, Safety

---

[4] In accordance with 10 U.S.C. §130e, the Department of Defense (DOD) Director of Administration and Management determined on July 26, 2013 that specific information "concerning physical vulnerabilities of critical infrastructure and explosives vulnerabilities at Naval Base Kitsap, Bangor, WA" is exempt from disclosure as CISI.  The DOD determination states that "[t]he public interest in the disclosure is not insignificant in this instance; however, the harm that would likely result from disclosure is very serious and much more significant.  Therefore, the public interest consideration in the disclosure of this information does not outweigh preventing the disclosure of the information."  The DOD determination applies to information at issue in this motion.  *See* Determination of the Director of Administration and Management, attached as Exhibit 1 hereto.

DEFS' MOTION REQUESTING THAT THE COURT  
MAKE ADDITIONAL FINDINGS  
NO. 2:12-CV-05537  
- 4 -  
U.S. DEPARTMENT OF JUSTICE  
999 18TH ST., S. TERRACE – SUITE 370  
DENVER, CO  80202  
(303)844-1376

Regulations for Handling, Storing, Production Renovation and Shipping ("OP 5 Manual") (Benedict Decl. Ex. 4, EHW 42283-310 and EWH 102590-91), Adams Decl. ¶¶ 3.a., 12, Hogue Decl. ¶¶ 3, 4(i); (2) documents relating to the Navy's analysis of explosive risk and the Department of Defense Explosives Safety Board ("DDESB") approval process (EHW 52985-91, EHW 75261-91, EHW 75292-94, EHW 75295-301, EHW 75393-417, and EHW 81131-45), Adams Decl. ¶¶ 3.b., 17, Hogue Decl. ¶¶ 3, 4(ii), 6 as well as (EHW 74344-50) Hogue Decl. ¶¶ 3, 5; and (3) the Navy's Waterfront Functional Plan and related documents (EHW 74642-932), Dargan Decl. ¶¶ 4.a., 12, Nortier Decl. ¶¶ 3-4  The three categories of documents are described below.

First, the OP 5 Manual provides regulations regarding explosives safety with respect to the storage, handling, and production of ammunition explosive and safety that are applicable at Navy and Marine Corps installations around the world.  Adams Decl. ¶ 4.  These regulations provide requirements that all facilities involving explosives must comply with.  *Id.*  The OP 5 Manual defines the effects of both accidental and intentional detonations through formulas based on the types and quantities of explosives and the vulnerability of nearby structures to damage from explosions.  *Id.* ¶ 6.  The most sensitive information relates to the distances that must be maintained between explosives, ships, or vehicles to prevent mass detonations.  *Id.*  Terrorist organizations could use this information to identify targets that would result in the most damage and would be most crippling to the Navy's mission capabilities.  *Id.*  The OP 5 Manual states explicitly that it contains information protected by the Arms Export Control Act, and, indeed, the released copies of the manual contain such information.  *Id.* ¶¶ 7, 9-10.  Contrary to the governing Navy regulations and inconsistent with the statutory requirements, the OP 5 Manual was inadvertently released as Exhibit 4 to the Benedict Declaration and in the Navy's Administrative Record (EHW0102590-91 and EHW0042283-310).  *Id.* ¶ 12.

DEFS' MOTION REQUESTING THAT THE COURT
MAKE ADDITIONAL FINDINGS
NO. 2:12-CV-05537
- 5 -
U.S. DEPARTMENT OF JUSTICE
999 18TH ST., S. TERRACE – SUITE 370
DENVER, CO 80202
(303)844-1376

Terrorists' organization could use the information in OP 5 to inflict grave harm to personnel on a military installation and the surrounding public by identifying targets that would create the most damage and disruption. *Id.* ¶ 6. Terrorists' organizations could also use the information to cripple military capabilities. *Id.* The Adams' Declaration explicitly outlines the compelling reason and factual basis for withholding from disclosure the OP5 Manual to prevent the possibility of terrorists using the information to target Navy facilities and inflicting grave harm on Navy personnel, civilians and the general public around the world.

Second, documents relating to the U.S. Department of Defense's explosives safety program, which is overseen by the DDESB, contain sensitive information relating to explosives safety. Adams Decl. ¶¶ 13, 17. For instance, these documents contain information relating to Explosive Safety Quantity Distance ("ESQD") arcs. *Id.* ¶14. An ESQD arc shows the effects of an explosion at varying distances and are used to define minimum separation distances for explosives. *Id.* These separate distances are designed to protect Navy personnel and the surrounding communities from potential harm due to explosions. *Id.* ¶¶ 14, 15. But this same information could also be used to endanger the security of the base and the surrounding communities. *Id.* ¶15. Someone could, for example, use this information to calculate the exact location of ordnance, the type of the ordnance, and the locations to target for maximum damage to the base. *Id.* ¶¶ 15, 20. Therefore, it is critical that this information not be publicly disclosed. *Id.* ¶¶ 15, 22.

The documents relating to the DDESB process also contain information relating to classifications of ordnance, such as explosive weight, hazard class, or compatibility groups. *Id.* ¶ 16. The Navy uses these standards to minimize and isolate any adverse effects due to an accident and provide for maximum safety. *Id.* The use of these standards minimizes the possibility of a sympathetic detonation, whereby an explosion in one area triggers another

DEFS' MOTION REQUESTING THAT THE COURT  
MAKE ADDITIONAL FINDINGS  
NO. 2:12-CV-05537

- 6 -

U.S. DEPARTMENT OF JUSTICE  
999 18TH ST., S. TERRACE – SUITE 370  
DENVER, CO 80202  
(303)844-1376

explosion at another location. *Id.* ¶ 16. This same information could be used by a terrorist to target specific locations and create maximum damage to infrastructure and personnel and disrupt the Navy's mission capabilities. *Id.* ¶¶ 16, 20. The Supreme Court "recognize[s] the strength of the Navy's interest in protecting the ESQD data and maps and other similar information" from disclosing certain information from the DDESB. *Milner v. Dep't of the Navy*, 131 S. Ct. 1259, 1270 (2011). The Supreme Court notes that the "Government has informed us that '[p]ublicly disclosing the [ESQD] information would significantly risk undermining the Navy's ability to safely and securely store military ordnance,' . . . and we have no reason to doubt that representation." *Id.*

The information in these documents should have been redacted as CISI and UCNI and should not have been disclosed to the public in order to protect Navy personnel and the surrounding communities from the possibility that this information could be used in a terrorist attack. Adams Decl. ¶ 21, 22. Terrorists' organizations could use information from the DDESB, in particular the ESQD arcs, to inflict severe harm on Navy personnel, jeopardize military installation security and negatively impact the health and safety of the public in the surrounding area. *Id.* ¶ 20. The Adams' Declaration explicitly outlines the compelling reasons and factual basis for withholding from disclosure the information contained in the May 29, 2008 NOSSA memorandum and attachments (EHW0081131-45), the Preliminary Site Approval Request for MILCON P-990 (EHW0052985-91), Risk Estimates for EHW-1 and EHW-2 (EHW0075292-94), Secretarial Certification (EHW0075295-301), Explosive Safety Secretarial Certification (EHW0075393-417), and Department of Defense Explosives Safety Board (DDESB) Briefing on EHW-2 Site Plan (EHW0075261-91). And the Hogue declaration, in addition to confirming the conclusions of the Adams declaration regarding these documents and the need to withhold them from disclosure, addresses another document (EHW0074344-50) that

DEFS' MOTION REQUESTING THAT THE COURT
MAKE ADDITIONAL FINDINGS
NO. 2:12-CV-05537

U.S. DEPARTMENT OF JUSTICE
999 18TH ST., S. TERRACE – SUITE 370
DENVER, CO 80202
(303)844-1376

- 7 -

was inadvertently released, contains similar CUI and similarly needs to be withheld from disclosure. Hogue Decl. ¶¶ 3-7.

Finally, the Waterfront Functional Plan ("WFP") and related documents contain information that should have been redacted as CISI. Dargan Decl. ¶ 12, Nortier Decl. ¶ 5. The WFP analyzes waterfront activities and infrastructure within Navy Region Northwest. Nortier Decl. ¶3. The WFP includes analysis of the Navy's current and future needs based on operational requirements, infrastructure shortfalls, and future mission changes. *Id.* ¶¶ 6-7. The WFP includes information relating to ESQD arcs which, as described above, could be used to most effectively target and damage Navy assets and personnel and endanger the surrounding communities. *Id.* ¶ 8; Adams Decl. ¶¶ 14-15. The WFP also contains sensitive information about the locations of critical infrastructure, the location of combat ships, and facilities inadequacies, all of which could be used to maximize the effect of an attack. Dargan Decl. ¶ 11 a-c. This information should have been withheld as CISI to minimize the risk of harm from a terrorist attack on Naval bases and the surrounding communities. *Id.* ¶¶ 12, 13.

Terrorists' organizations could use information from the WFP, in particular the ESQD arcs, to inflict severe harm on Navy personnel, jeopardize military installation security and gravely affect the health and safety of the public in the surrounding area. *Id.* ¶ 20. Declarations from Adams and Dargan clearly describe the compelling reasons and factual basis for withholding from disclosure the information contained in the WFP (EHW0074642-932).

In sum, the documents at issue are withheld in their entirety or redacted because information contained within those materials are protected from disclosure under UCNI, CISI or the Arms Export Control Act. *See* 10 U.S.C. §128, 10 U.S.C. §130e, or *see* 10 U.S.C. §130. Thus, the Navy has demonstrated that there are compelling reasons for the Court to find that the documents should be protected from disclosure.

DEFS' MOTION REQUESTING THAT THE COURT
MAKE ADDITIONAL FINDINGS
NO. 2:12-CV-05537

- 8 -

U.S. DEPARTMENT OF JUSTICE
999 18TH ST., S. TERRACE – SUITE 370
DENVER, CO  80202
(303)844-1376

# CONCLUSION

Accordingly, Defendants respectfully request the Court issue an order making specific findings that the Navy has demonstrated compelling reasons to withhold from disclosure the information in the documents at issue.  Defendants also respectfully request that the Court issue an order that Ground Zero return the documents that it received from the Navy's inadvertent production in this litigation.  Protection of the information contained within these documents serves to safeguard the public health and safety or national security to the military members, military installations and the general public.

Respectfully submitted this 15th day of July, 2020,

        JEAN E. WILLIAMS
        Deputy Assistant Attorney General

        */s/ Luther L. Hajek*
        LUTHER L. HAJEK, D.C. Bar No. 467742
        Trial Attorney, Natural Resources Section
        United States Department of Justice
        Environment and Natural Resources Division
        999 18th St., South Terrace, Suite 370
        Denver, CO 80202
        Tel: (303) 844-1376
        Fax: (303) 844-1350
        E-mail: Luke.Hajek@usdoj.gov

        PETER KRYN DYKEMA
        D.C. Bar No. 419349
        Trial Attorney, Natural Resources Section
        United States Department of Justice
        Environment and Natural Resources Division
        Ben Franklin Station, P.O. Box 663
        Washington, DC 20044-0663
        Tel: (202) 305-0436
        Fax: (202) 305-0274
        E-mail: Peter.Dykema@usdoj.gov

        Attorneys for Defendants

DEFS' MOTION REQUESTING THAT THE COURT
MAKE ADDITIONAL FINDINGS
NO. 2:12-CV-05537

U.S. DEPARTMENT OF JUSTICE
999 18TH ST., S. TERRACE – SUITE 370
DENVER, CO 80202
(303)844-1376

- 9 -

CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2020 I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send email notification to attorneys of record.

*/s/ Luther L. Hajek*
Luther L. Hajek

DEFS' MOTION REQUESTING THAT THE COURT
MAKE ADDITIONAL FINDINGS
NO. 2:12-CV-05537
- 10 -

U.S. DEPARTMENT OF JUSTICE
999 18TH ST., S. TERRACE – SUITE 370
DENVER, CO 80202
(303)844-1376