Honorable Ronald B. Leighton
August 7, 2020

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| GROUND ZERO CENTER FOR NONVIOLENT ACTION, WASHINGTON PHYSICIANS FOR SOCIAL RESPONSIBILITY, and GLEN S. MILNER,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE NAVY, et al.,<br><br>Defendants. | NO. 3:12-cv-05537-RBL<br><br>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO NAVY'S MOTION AND IN SUPPORT OF CROSS-MOTION FOR ORDER UNSEALING ALL DOCUMENTS |

## I.    INTRODUCTION.

The Ninth Circuit remanded this case for further proceedings to determine which documents Plaintiffs may freely disseminate, and which may remain sealed and covered by this court's protective order. Without even bothering to address the issue of which of the documents the Plaintiffs obtained from independent sources, the Navy argues that *all* of the documents should remain under seal. Plaintiffs, on the other hand, maintain that *none* of the documents should remain under seal. More specifically, Plaintiffs submit that

(1) (a) seven of the documents at issue were obtained from an independent source and thus their dissemination cannot be prohibited, and

(1) (b) even if these seven documents had not been obtained independently, the Navy cannot and has not shown any compelling reason why any of them should remain

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO NAVY'S MOTION AND IN SUPPORT OF CROSS-MOTION FOR ORDER UNSEALING ALL DOCUMENTS – 1 (3:12-cv-05537-RBL)

MIL068-0002 6300954

sealed, and

(2) the Navy has also failed to show compelling reasons why any of the four documents that were *not* obtained from an independent source should continue to be restricted.

Plaintiffs respectfully submit that the Navy

    a.  has not carried its "rigorous burden" of proving that there are "compelling reasons to continue to shroud these documents in secrecy," and

    b.  cannot articulate the factual basis for its assertion that continued restrictions on the use of these documents is necessary "without resort to hypothesis or conjecture."

In sum, Plaintiffs ask the Court to declare that they are free to use all of the 11 documents at issue and that they can disseminate all of them to whomever they please.

## II.      THE DECISION OF THE COURT OF APPEALS.

In *Ground Zero Center v. United States Navy,* 860 F.3d 1244 (9th Cir. 2017), the Court made two determinations regarding documents covered by this Court's protective orders.

First, the Court determined that if the documents had been independently obtained then the Plaintiffs were free to disseminate them:

> At the hearing on Ground Zero's motion to unseal, the district court stated that it would not "sanction the plaintiffs for possessing or finding [the documents] from Google." The court also stressed that its intent was to avoid "expand[ing] the reach of these documents by including them in statements, arguments, [or] evidence for purposes of th[e] preliminary injunction." These comments indicate that the Order did not forbid Ground Zero from disseminating copies of the sealed documents if procured from an independent source.  By independent source, we mean what the district court implied: Ground Zero may discuss and distribute the documents in question so long as it acquires the documents from a source not involved in this litigation. *See Seattle Times v. Rhinehart,* 467 U.S. 20, 34, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). It may do so even if the independent source originally obtained the documents from Ground Zero, so long as Ground Zero disseminated them before the district court entered the sealing order. *Cf. United States v. Caparros,* 800 F.2d 23, 27 (2d Cir. 1986) (concluding that from whence a document was "most recently" obtained

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO NAVY'S
MOTION AND IN SUPPORT OF CROSS-MOTION FOR ORDER
UNSEALING ALL DOCUMENTS – 2
(3:12-cv-05537-RBL)

MIL068-0002 6300954

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

determined the court's power to restrict dissemination of it).We so construe the Order, thereby resolving Ground Zero's vagueness objection.

*Ground Zero*, 860 F.3d at 1258 (citations omitted).

Thus, the Ninth Circuit ruled that this court's protective orders simply did not apply to independently obtained documents:

> Here, Ground Zero may disseminate the documents at issue so long as it obtains them from an independent source. The Order therefore prohibits dissemination *only* of those documents filed in error that Ground Zero acquired exclusively through this litigation and that it had not already disseminated when the Order was issued.

*Id.* at 1260 (italics in the original).  However, the Ninth Circuit did not determine *which* of the sealed documents constituted an independently obtained document.

Plaintiffs maintain that seven of the sealed documents were independently obtained. After the Navy refused to say whether it agreed with Plaintiffs, and refused to take any position as to any one of these seven documents, the Plaintiffs served the Navy with Requests for Admission[1] which the Navy has refused to answer.

Second, the Ninth Circuit held that in order to prohibit the Plaintiffs from using or disseminating the sealed documents, instead of merely making a showing of good cause as required when seeking an ordinary protective order covering documents obtained by means of discovery, the Navy had to meet the higher "compelling reasons" standard:

> ***Because the Order in this case raises more serious First Amendment concerns than would a typical protective order affecting only discovery materials, however, we require a showing of more than good cause to justify it,*** as courts have done in other cases raising similar First Amendment questions. For instance, once information subject to a protective order is made available to the public in the course of a trial, the party seeking to limit public access must meet a higher threshold to justify re-sealing that information.
>
> We also require parties to show compelling reasons to justify sealing documents attached to dispositive motions or other filings that relate to the merits of a case even when those documents were produced pursuant to a sealing order.

---

[1] *Plaintiffs' Requests for Admission,* Appendix A to *Declaration of James E. Lobsenz* dated August 3, 2020.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO NAVY'S MOTION AND IN SUPPORT OF CROSS-MOTION FOR ORDER UNSEALING ALL DOCUMENTS – 3
(3:12-cv-05537-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

MIL068-0002 6300954

[Citations omitted]. ***This higher standard is warranted because, "[u]nlike private materials unearthed during discovery, judicial records are public documents almost by definition, and the public is entitled to access by default,"*** a fact that "sharply tips the balance in favor of production when a document, formerly sealed for good cause under Rule 26(c), becomes part of a judicial record." [Citations omitted].

Although we read Ground Zero's briefs as challenging the restrictions on its dissemination of the materials filed, rather than the district court's sealing decision as such, caselaw analyzing when it is appropriate to seal presumptively public court records is nevertheless instructive. The district court imposed its restrictions on Ground Zero's speech as part of an order that not only withdrew the erroneously filed documents from the public judicial record but also sealed two of Ground Zero's briefs relating to its motion for a preliminary injunction. We have in the past applied the "compelling reasons" standard in evaluating whether to seal documents attached to preliminary injunction briefing where the issues discussed were more than tangentially related to the merits of a case.

Relying on these precedents, ***we hold that, to impose continuing restrictions on Ground Zero's public dissemination of documents that the Navy inadvertently made public, a court must identify "a compelling reason [to impose the restriction] and articulate the factual basis for its ruling, without relying on hypothesis or conjecture."*** *Kamakana* [*v. City and Cty. of Honolulu,*] 447 F.3d [1172], 1179 [(9th Cir. 2006)] (quoting *Hagestad v. Tragesser,* 49 F.3d 1430, 1434 (9th Cir. 1995)). We adopt this rigorous standard from a related context to reflect the First Amendment interests implicated when the Navy posted the documents on the public docket. . . .

\*   \*   \*   \*   \*

National security concerns can, of course, provide a compelling reason for shrouding in secrecy even documents once in the public domain. [Citations omitted]. Still, what we have here are not Top Secret—or even classified—documents. To determine whether national security concerns justify continuing restrictions on Ground Zero's public speech here, more analysis is needed than occurred in the district court.

Although the district court considered declarations the Navy submitted in opposition to Ground Zero's motion to unseal, it did not make specific findings, either in its initial sealing order, or during its ruling on Ground Zero's motion to unseal, as to why Ground Zero may properly be prohibited from further disseminating the documents at issue.

It is not enough that the documents could have been protected from disclosure in the first instance, or that the documents "*implicate* national security" (emphasis added), in some vague sense. ***Any restriction of Ground Zero's***

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO NAVY'S
MOTION AND IN SUPPORT OF CROSS-MOTION FOR ORDER
UNSEALING ALL DOCUMENTS – 4
(3:12-cv-05537-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

MIL068-0002 6300954

*public speech at this point must be justified by specific facts showing that disclosure of particular documents would harm national security. Relevant to this assessment will be the fact that the documents are not classified, and the extent to which the information they contain already has been publicly disclosed.*

*Ground Zero Center*, at 1260-62 (emphasis added) (citations and footnotes omitted).

## III.   EVIDENCE RELIED UPON.

Plaintiffs rely upon the following:

1.     *Declaration of Glen Milner in Response to Defendants' Motion Requesting Additional Findings, Opposing Such Findings for All of the Documents* (hereafter "*DGMR*") (filed contemporaneously with this memorandum).

2.     *Declaration of James E. Lobsenz* (filed contemporaneously with this memorandum).

3.     *Second Declaration of Glen Milner in Support of Plaintiffs' Motion to Unseal Records*, Dkt. #53-1 (previously filed on November 21, 2012).

4.     *Declaration of Glen Milner in Support of Plaintiffs' Motion for a Preliminary Injunction*, Dkt. #19-1, (previously filed September 6, 2012).

## IV.   ARGUMENT.

A.     <u>Documents obtained from an independent source.</u>

   1.     **The Ninth Circuit has already ruled that the Plaintiffs cannot be prohibited from disseminating any independently obtained document.**

Seven of the eleven documents which the Navy wishes this Court to continue to prohibit the Plaintiffs from using or disseminating, were obtained from an independent source.  The Ninth Circuit has already held that the Plaintiffs *cannot* be prohibited from using documents that they obtained independently. *Ground Zero v. United States Navy*, 860 F.3d at 1258 & 1261.

      (a)     **So far the Navy has refused to identify which of the eleven documents were independently obtained.**

Months ago the Plaintiffs identified the documents that they obtained from an

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO NAVY'S MOTION AND IN SUPPORT OF CROSS-MOTION FOR ORDER UNSEALING ALL DOCUMENTS – 5 (3:12-cv-05537-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

MIL068-0002 6300954

independent source and asked the Navy whether they disputed the fact that any of them were independently obtained.  The Navy has steadfastly refused to discuss the matter, insisting instead that the remand hearing does not concern this issue.  The Navy has refused to stipulate that any document was independently obtained, and has also refused to assert that any one of the documents identified by Plaintiffs was *not* independently obtained.  Since the Navy refused to take a position on any of these documents, Plaintiffs served the Navy with Requests for Admission on July 13, 2020.[2]   The Navy's responses are due on August 12, 2020.

On July 15, 2020, the Navy filed its motion for the entry of additional findings and listed the eleven documents that it wants to remain under this court's prohibition against dissemination.  Despite the fact that the Navy has known for years (since September 6, 2012) that the Plaintiffs maintain that several of these documents were obtained from an independent source, the Navy simply ignores the independent source issue.  Plaintiffs submit that the independent source issue is dispositive for seven of the eleven documents at issue in this remand hearing.

**(b)**     **Three of the Documents were obtained from the internet and have been continuously available to the public for the past decade.**

Three of the documents in dispute are NAVSEA OP-5 documents (listed as Documents 1, 2 and 11 in the chart in *DGMR*, ¶2).  As Milner points out, these documents have been publicly available on the internet for years and they are still currently publicly available on the internet.  *Id.*, ¶6. Milner explains that he found these documents on the internet as early as 2010 in two separate places.  *Id.,* ¶¶7-10.  He further relates that over the past decade he has found them again and again.  *Id.,* ¶11.  Over the past decade he has found them at least 45 times.  *Id.,* ¶12.

**(c)**     **Four of the documents were independently obtained from a member of the news media.**

Four of the documents in dispute are ones that Milner sent to reporters before this Court

---

[2] A copy of these Requests for Admission are attached to the Declaration of James E. Lobsenz as Appendix A.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO NAVY'S
MOTION AND IN SUPPORT OF CROSS-MOTION FOR ORDER
UNSEALING ALL DOCUMENTS – 6
(3:12-cv-05537-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

MIL068-0002 6300954

entered its order prohibiting any further dissemination of them.  *Id.*, ¶¶ 13-16.  These documents

are listed as Documents 3, 5, 7 & 8 in the chart in *DMGR,* ¶2.  In anticipation of the Navy's

motion this year, Milner asked a reporter if he still had the documents, and the reporter sent the

documents back to Milner unsolicited.  *Id., ¶¶* 19-20.  The Ninth Circuit has ruled that despite

the fact that the reporter originally obtained these documents from Milner and despite the fact

that Milner originally obtained them from the Administrative Record, when the reporter sent

them back to Milner this reacquisition of the documents constituted obtaining them from an

independent source.  *Ground Zero*, 860 F.3d at 1258, citing *United States v. Caparros,* 800 F.2d

23, 27 (2d Cir. 1986).

> **2.      Since seven of the eleven documents at issue were obtained from an independent source, their dissemination cannot be prohibited.**

Accordingly, Milner obtained seven of the eleven documents at issue (Documents 1, 2,

3 5, 7, 8 and 11 in the chart) from an independent source.  Plaintiffs expect that the Navy will

admit, or at the very least fail to deny, the Plaintiffs' claims that seven of the documents were

independently obtained.  Therefore, since the Ninth Circuit held that Plaintiffs are free to

disseminate any document that they obtained from a source independent of the Administrative

Record, this Court must deny the Navy's motion insofar as these seven documents are

concerned.

> **3.      Even if the Court were to conclude that one or more of these seven documents were not independently obtained, there still would be no justification for continuing to prohibit their dissemination because when one considers "***the extent to which information they contain already has been publicly disclosed,"*** it is evident that there are *not* compelling reasons to find that allowing Plaintiffs to disseminate them "would" lead to harm.**

The NAVSEA OP-5 documents have remained publicly available on the Internet for the

past two decades.  Except for the Plaintiffs, who have been prohibited from using these

documents since November 9, 2012, everyone in the world has been able to view those

---

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO NAVY'S
MOTION AND IN SUPPORT OF CROSS-MOTION FOR ORDER
UNSEALING ALL DOCUMENTS – 7
(3:12-cv-05537-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

MIL068-0002 6300954

documents, and yet no harm to national security has resulted.  The Ninth Circuit has said that this factor is relevant and it demonstrates that the Navy cannot and has not shown a compelling reason for continuing this prohibition.  Therefore, even if they were not independently obtained, it would still be unconstitutional to prohibit Plaintiffs from disseminating them.

The same is true of the four documents obtained from the reporter.  The Kitsap Sun wrote articles in 2012 based on the information contained in the documents.  Thus, even if these four documents were not independently obtained, there would still be no compelling reason to maintain them under seal since they have already been discussed in publicly available newspaper articles (articles which are still available on line).

**B.**  **Documents that were not independently obtained.**

> **1.**  **The Ninth Circuit has already ruled that the fact that a document contains protected information which would have been protected from disclosure "in the first instance" is irrelevant once the document has been exposed to public view, even if that disclosure was inadvertent.  The Navy simply repeats the argument that the Ninth Circuit has already rejected.**

There are four documents which Plaintiffs do not claim to have obtained from an independent source.  The Navy makes two arguments in support of its conclusion that there are compelling reasons for continuing to prohibit the dissemination of these four documents.  Neither argument is persuasive.

First, the Navy repeats the argument that it made eight years ago.  It notes that some of the documents at issue "contain information that is protected from disclosure by status as Unclassified Controlled Nuclear Information ("UCNI")," or as Critical Infrastructure Security Information ("CISI").  *Defendants' Motion* at 1-2.  But the Ninth Circuit has already *rejected* the argument that this is sufficient.  The Court of Appeals held that while such information is protected from disclosure in response to a FOIA request or in civil discovery, that is not sufficient to justify a gag order *after* the government has placed the information in court files open to the public.  After noting that "what we have here are not Top Secret—or even

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO NAVY'S MOTION AND IN SUPPORT OF CROSS-MOTION FOR ORDER UNSEALING ALL DOCUMENTS – 8
(3:12-cv-05537-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

MIL068-0002 6300954

classified—documents," 860 F.3d at 1262, the Ninth Circuit rejected the argument that the

Navy now makes again:

> ***It is not enough that the documents could have been protected from disclosure in the first instance***, or that the documents "*implicate* national security" (emphasis added), in some vague sense.

860 F.3d at 1262 (emphasis added).

At this point, because the Navy put the documents in the court record, as "the party

seeking to limit public access [it] must meet a higher threshold to justify re-sealing that

information." *Id.* at 1260-61. The Navy simply ignores the huge difference between what

would have sufficed to justify a protective order "in the first instance" and what is needed to

reseal documents that have been placed before the public eye. The Ninth Circuit cited to two

prior cases that illustrated this point:

> *See Poliquin v. Garden Way, Inc.,* 989 F.2d 527, 533 (1st Cir. 1993) (holding that "the ordinary showing of good cause which is adequate to protect *discovery material* from disclosure cannot alone justify protecting such material after it has been introduced at trial," and concluding that "only the most compelling showing can justify" continued secrecy); *see also In re Violation of Rule 28(D)*, 635 F.3d 1352, 1358 (Fed. Cir. 2011) (quoting *Poliquin* with approval).

> We also require parties to show "compelling reasons" to justify sealing documents attached to dispositive motions and other filings that relate to the merits of a case, even when those documents were produced pursuant to a sealing order. *Kamakana v. City and Cty. Of Honolulu,* 447 F.3d 1172, 1180 (9th Cir. 2006) (holding that "[t]hose who seek to maintain the secrecy of documents attached to dispositive motions must meet the high threshold of showing that compelling reasons support secrecy" (internal quotation marks omitted)); *see also Ctr. For Auto Safety v. Chrysler Grp., LLC,* 809 F.3d 1092, 1101 (9th Cir.), *cert. denied*, ___ U.S. ___, 137 S.Ct. 38, 196 L.Ed.2d 26 (2016) (applying the same standard to documents attached to motions "more than tangentially related to the merits of a case").

Eight years ago the Navy told this court that some of the documents contained UCNI

and CISI information. The Ninth Circuit ruled that this fact is irrelevant. Moreover, the Ninth

Circuit ruled that the fact that these documents were *un*classified weighed against the Navy's

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO NAVY'S MOTION AND IN SUPPORT OF CROSS-MOTION FOR ORDER UNSEALING ALL DOCUMENTS – 9
(3:12-cv-05537-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

MIL068-0002 6300954

request that they be sealed.

Today the Navy repeats these same arguments.  It informs the Court that it has had two new witnesses, Gary A. Hoague and Michael K. Nortier, review the declarations of Richard T. Adams and Thomas J. Dargan which were submitted in 2012.  *Defendants' Motion*, at 4.  And these new witnesses simply repeat the same conclusions that Adams and Dargan reached.  Just as Adams and Dargan said in 2012, Hoague and Nortier say that the documents at issue contain UCNI, CISI and Arms Export Control Act information that should have been redacted from the documents before they were placed in the Administrative Record.  The Navy reasons that this is sufficient to justify continued restrictions on the use of these documents:

> In sum, the documents at issue are withheld in their entirety or redacted *because information contained within those materials are protected from disclosure* under UCNI, CISI or the Arms Export Control Act. See 10 U.S.C. §128, 10 U.S.C. §130e, or see 10 U.S.C. §130.  ***Thus, the Navy has demonstrated that there are compelling reasons*** for the Court to find that the documents should be protected from disclosure.

*Defendants' Motion* at 8:24-28 (emphasis added).

But the Ninth Circuit's decision explicitly held that this "is not enough."  860 F.3d at 1262 (emphasis added).  The fact that this information was protected "in the first instance" – that it was protected from discovery requests or FOIA requests – "is not enough" because the Navy inadvertently put the documents in the court record where the public could see them.[3] That is why the Ninth Circuit held "we require a showing of more than good cause to justify" the resealing of these documents.  *Id.* at 1260.  The Ninth Circuit gave two examples:  (1) the use of a document as evidence at trial; and (2) the attachment of a document to a dispositive

---

[3] The Navy purports to rely on the Supreme Court's decision in *Milner v. Department of the Navy,* 131 S.Ct. 1259 (2011).  But the Navy either misses, or simply ignores, the distinction between that case and this one.  *Milner* was a FOIA case where there was never any contention that the Navy had inadvertently disclosed documents that were exempt from a FOIA request.  This case is *not* a FOIA case.  This case *is* one where the Navy inadvertently placed protected documents in the public record.  Thus, *Milner* is simply an illustration of the Ninth Circuit's statement that the documents in this case "*could have been protected from disclosure in the first instance*."  860 F.3d at 1262 (emphasis added).  But the fact that it could have done that "cannot alone justify protecting such material after" the documents have been placed in the public record.  *Id.*at 1261 citing *Poliquin,* 989 F.2d at 533.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO NAVY'S MOTION AND IN SUPPORT OF CROSS-MOTION FOR ORDER UNSEALING ALL DOCUMENTS – 10 (3:12-cv-05537-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

MIL068-0002 6300954

motion or some other significant pleading filed in the court file. "[O]nce information subject to a protective order is made available to the public" in one of these ways, "the party seeking to limit public access must meet a higher threshold to justify re-sealing that information." *Id*.

In this case, all 11 documents at issue were "made available to the public" because the Navy put them in the Administrative Record that it filed with the district court. Moreover, it was not only possible for any member of the public to read these documents, four of these documents were distributed to reporters, one reporter wrote articles on the Navy's planned construction of the second wharf which used information the reporter found in those documents, and thus all the readers of the Kitsap Sun read some of the information that the Navy claims should still be suppressed. *DGMR,* ¶¶15 – 18.

In 2017 the Ninth Circuit held that the fact that the documents in question contained UCNI, CISI and information protected by the Arms Export Control Act was *not enough* to justify a restriction on their use and dissemination. It is still not enough. The Ninth Circuit noted that none of documents were classified. They are still not classified. Nothing has changed since 2012 that would strengthen the Navy's argument. But something has changed which would further weaken it.

   2.    **The Navy does not offer any "specific facts" to show that an absence of restrictions "would" cause harm. The Navy states only that allowing dissemination of the documents "could" lead to something bad, and offers nothing more than conjecture.**

The Navy has not offered any specific facts. Instead, the Navy offers only the conclusory opinions of naval officers that the dissemination of these documents could lead to something bad.

The Ninth Circuit specifically held that the record on appeal did *not* justify any restriction on disclosure of the documents and remanded so that the Court could consider the question again. Offering the same type of evidence that it offered in 2012 does not change the

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO NAVY'S
MOTION AND IN SUPPORT OF CROSS-MOTION FOR ORDER
UNSEALING ALL DOCUMENTS – 11
(3:12-cv-05537-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

MIL068-0002 6300954

result.  The Navy does not point to *any* piece of information contained in *any* specific document that in fact does cause harm to national security.

The language employed by the Navy's witnesses is revealing.  The Ninth Circuit held that the burden is on the Navy to show that disclosure "*would*" harm national security:

> Any restriction of Ground Zero's public speech at this point must be justified by specific facts showing that disclosure of particular documents ***would*** harm national security.

860 F.3d at 1262 (emphasis added).  But the Navy has not offered any such evidence. The language consistently employed by the Navy is that disclosure "*could*" harm national security.  *See, e.g., Defendants' Motion*, at 4:13-18;[4] 6:1-5;[5] 6:17-21; 7:12-16;[6] *Declaration of Nortier*, ¶5.[7]   But it is not enough to opine that harm to national security is merely *possible* (that it "could" happen).  The Navy's burden is to show that it "would" happen.

As noted below, virtually all of the information the Navy seeks to suppress has been in the public domain for the past eight years and yet no terrorist attacks using this information have been perpetrated.  This simply shows that it is <u>un</u>likely that any harm will result if the Plaintiffs are allowed to use and disseminate these documents.  If organizations like Al Queda and ISIS have not used the information regarding the Navy's wharfs that has been readily available on the Internet for decades to harm the country, what reason is there to think that they will do so now if the Plaintiffs' dissemination of the documents at issue ceases to be prohibited?

---

[4] "In order to ensure that the information in the documents still needed to be protected from disclosure, the Navy recently reviewed the affected documents, and determined the information continues to be subject to one or more of the statutory provisions and that public dissemination of the information *could* have significant adverse effects on the public health and safety or national security."  (Italics added).

[5] Terrorists' organization *could* use the information in OP 5 to inflict grave harm to personnel on a military installation and the surrounding public by identifying targets that would create the most damage and disruption. *Id.*, ¶6.  Terrorists' organizations *could* also use the information to cripple military capabilities.  *Id.*" (Italics added).

[6] "The information in these documents should have been redacted as CISI and UCNI and should not have been disclosed to the public in order to protect Navy personnel and the surrounding communities from the possibility that this information *could* be used in a terrorist attack." (Italics added).

[7] Disclosure of information "*could* be used to harm persons and property on those bases and in nearby communities." (Italics added).

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO NAVY'S MOTION AND IN SUPPORT OF CROSS-MOTION FOR ORDER UNSEALING ALL DOCUMENTS – 12
(3:12-cv-05537-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

MIL068-0002 6300954

C.    **Specific analysis of the four documents that were not independently obtained shows that there are no compelling reasons to maintain them under seal because the information that they contain has been readily available to the public for years.**

1.    **The Risk Estimates Document (EHW 75292 – 75294).**

This three-page document deals generally with propellant-related risks at the Explosive Handling Wharves at Bangor.  As plaintiff Milner explains, this document relies upon and references four other documents. *DGMR,* ¶¶23-25.  Milner obtained a copy of the first reference document through a FOIA request in 1996. *Id.,* ¶26.  From responses to other FOIA requests he obtained several documents similar to the second reference document. *Id.,* ¶27.  Milner has a redacted version of the third reference document because the Navy filed that document in the Administrative Record (EHW 115736 – 115760), and this document provides additional comprehensive background for EHW 75292 – 75294. *Id.*, ¶28.  Thus Milner essentially has three of the four reference documents used in the creation of the Risk Estimates document.

Based on hundreds of propellant test records and risk assessments that Milner obtained from the Navy, Milner has written an article on the risks associated with the propellant used in TRIDENT missiles, and footnotes in that article, published 19 years ago, provides the public with still more publicly available documents concerning propellant hazards. *DGMR,* ¶¶29-30.  Finally, after the Risk Estimates document in the Administrative Record was sealed, the Navy filed a "replacement version" of the same document.  That version openly provides the summary for the risk for exposed personnel and states that "Considering the highly unlikely event where both Wharfs were involved, the estimated probability of fatality would still fall below $1 \times 10^{-6}$." *Id.,* ¶31.

As Milner states,

I cannot understand why the Navy would need to withhold portions of a document that: (1) is admittedly "a ***rough estimate*** of the risks which take into account exposure to personnel"; (2) contain exact information that has been released through the FOIA; (3) contain information that relies upon documents that have been released through the FOIA; and (4) contain the summary

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO NAVY'S MOTION AND IN SUPPORT OF CROSS-MOTION FOR ORDER UNSEALING ALL DOCUMENTS – 13 (3:12-cv-05537-RBL)

MIL068-0002 6300954

information and recommendations provided in the document itself.

*DGMR,* ¶32.

In sum, given the extent of publicly available documents which contain the same information, there are no compelling reasons for continuing to prohibit Plaintiffs from disseminating the Risk Estimates document.

### 2.     The Site Approval Document (EHW 81131 – 81145).

The Site Approval consists of three separate documents and contains information that has been released through the FOIA and through other documents released in the Administrative Record, and contains siting information that can be verified through publicly available aerial photography or by visiting the shoreline and witnessing Navy activity on the waterfront. *DGMR,* ¶33.  All the statements made in the following section regarding the Explosive Safety Board's Final Approval of Site document apply equally to this Site Approval Document because the seven-page Final Approval document is contained within the fifteen-page Site Approval document. *See DMGR,* ¶¶34-35.

### 3.     The Department of Defense Explosive Safety Board's Final Approval Document (EHW 74344 – 74350).

This document is one of the three separate documents contained within the larger Site Approval Document (EHW 81131 – 81145). *DMGR,* ¶¶34.  There is another record (EHW 113382 – 113388) filed in the Administrative Record, *that has not been sealed,* that is nearly the same record as EHW 74344 – 74350.  *Id.,* ¶35.  This unsealed record is considerably less redacted than the Replacement versions of the two sealed documents (EHW 74344 – 74350 and EHW 81131 – 81145) and it contains more than five percent more of the record than released in the entire Replacement version of the Site Approval document (EHW 81131 – 81145) and more the ten percent more of the record than released in the Replacement version of the Final Approval (EHW 74344 – 74350).  *Id.,* ¶36.  The absurdity of the Navy's contention that there are compelling reasons to keep large portions of the Site Approval and Final Approval

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO NAVY'S
MOTION AND IN SUPPORT OF CROSS-MOTION FOR ORDER
UNSEALING ALL DOCUMENTS – 14
(3:12-cv-05537-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

MIL068-0002 6300954

documents sealed is manifested by the fact that these portions are unsealed in another part of the Administrative Record.

In addition, the redactions to the Replacement versions for the Site Approval (EHW 81135 – 81141) and the Final Approval (EHW 74344 – 74350) are very different. One example of this are identical pages that were released as Replacement versions for EHW 81138 and EHW 74347 in which nearly opposite parts of the same page were redacted in the documents. These two pages alone should be enough to reject the Navy's request for the continued sealing of the Site Approval and Final Approval documents. *Id.,* ¶38-39.

### 4.    The Waterfront Function Document (EHW 76462 – 74932).

The Navy asserts that Plaintiffs should continue to be prohibited from disseminating this document because the safety arc information could be used to calculate where to locate ordnance in order to do maximum damage. *Defendants' Motion*, at 6. Explosive safety quantity distance arcs define the minimum safe separation distances for explosives. *Id.* But the Navy simply ignores the fact that this information about safety arcs is already publicly available and has been for years. *DGMR*, ¶49.

Two months before this Court entered its sealing order, on September 6, 2012 Milner filed his first declaration in this case. Dkt. #19-1. *Id.,* ¶42. Exhibit 11 to that declaration consisted of eight pages of NAVSEA OP 5. *Id.* The Navy has never sought to seal these eight pages; thus they have been publicly available for almost eight years now. *Id.* As Milner explained in his first declaration, publicly available Explosive Safety Board documents readily found on the internet contain the same information regarding safety arcs. *Id.*, ¶¶43-47. In addition, numerous documents that Milner obtained by means of FOIA requests contain the same information. *Id*., ¶¶50-51. Milner attached copies of these documents to his initial declaration. Dkt. #19-1. *Id.* Thus, for the past eight years, each of these documents could not only be found individually on the internet or obtained by means of FOIA requests, they could

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO NAVY'S
MOTION AND IN SUPPORT OF CROSS-MOTION FOR ORDER
UNSEALING ALL DOCUMENTS – 15
(3:12-cv-05537-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

MIL068-0002 6300954

1    also be found in the court file in this case.

2              In fact, information about safety arcs has been publicly available for more than 40 years.

3    Long before the internet, the Department of Defense and the Navy made this kind of

4    information publicly available.  For example, a paper by David Freund entitled "Origin and

5    Subsequent Modifications of Explosive Safety Quantity-Distance Standards for Mass

6    Detonating Explosives with Special Reference to Naval Vessels," published in May of 1978 by

7    the David W. Taylor Naval Ship Research and Development Center, states on its cover:

8    "APPROVED FOR PUBLIC RELEASE: DISTRIBUTION UNLIMITED."   (Title page

9    attached as Appendix A).   This publication can be found today on the Internet at

10   https://apps.dtic.mil/dtic/tr/fulltext/u2/a058803.pdf.

11            The Navy argues that there are compelling reasons to seal this document because it

12   contains diagrams and maps of the wharves themselves.  But in addition to the fact that such

13   diagrams are publicly available (see, e.g. Exhibits 3, 4, 5 6, & 7 attached to Docket #19-1 and

14   DMGR ¶45, Appendix F), the Navy also ignores the fact that the wharves can be viewed from

15   the water from a boat and from the air.  *Id., ¶¶55*, 59-60.  Indeed, anyone can see the wharves

16   from the air by using satellite photos that can be accessed simply by using Google Earth. *Thus,*

17   *t*here is no reason at all – much less any compelling reason – to continue to seal this document.

18                                            **V.**

19        **CONTINUED SEALING WOULD CONFLICT WITH OFFICIAL**
         **NAVY POLICY TO MAKE INFORMATION PUBLICLY**
20                **AVAILABLE TO THE FULLEST EXTENT POSSIBLE.**

21            Although the Navy represents its disclosure of the eleven documents at issue as

22   "inadvertent" and as a departure from its normal practice of keeping information about the siting

23   of facilities where explosives are stored or handled undisclosed, in fact the opposite is true.  It

24   is the Navy's attempt to prohibit the dissemination of such information which is a departure

25   from its usual practices.  Indeed, it is official government policy to make such information

26

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO NAVY'S
MOTION AND IN SUPPORT OF CROSS-MOTION FOR ORDER
UNSEALING ALL DOCUMENTS – 16
(3:12-cv-05537-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

available to the public.  For example, the DoD Directive on DoD UCNI, directive 5210.83, section 4.3 plainly states:

> It is DoD policy ... that Government information shall be made publicly available **to the fullest extent possible** by applying the minimum restrictions consistent with the requirements of 10 U.S.C. 128 (reference (a)) necessary to protect the health and safety of the public or the common defense and security.

*DMGR*, ¶65.

Consistent with that policy,  all eight volumes of the Department of Defense Explosives Safety Board (DDESB) standards and criteria, DOD 6055.09-M, and the United Nations Organization (UNO) hazard classification system which is referenced in those standards, are publicly available on the Internet at https://www.wbdg.org/ffc/dod/manuals and at https://www.leg.state.mn.us/docs/2015/other/150681/PFEISref_2/UNO%202012.pdf. *DMGR*, ¶¶62, 64. Similar records, including the United Nations Ammunition Technical Guidelines are also available online at https://www.un.org/disarmanent/unsaferguard/guide-lines and https://denix.osd.mil/ddes/home/home-documents/desr-6055-09-edition-1. *Id.*, ¶¶63-64. The fact that all these standards for the storage and handling of nuclear explosives have been made publicly available in accordance with an official policy in favor of making such information "publicly available to the fullest extent possible" shows that there are no compelling reasons to keep the documents at issue in this case under seal.

## VI.   CONCLUSION

The Navy has not met its "rigorous" burden of proving that there are compelling reasons to continue to prohibit the Plaintiffs from disseminating any of these documents.  Under the Ninth Circuit's decision, the seven documents that were obtained from independent sources (the internet and the reporter) cannot be restricted.  And even if they weren't independently obtained documents, there *still* would not be a factual basis to find the existence of compelling reasons to maintain them under seal.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO NAVY'S
MOTION AND IN SUPPORT OF CROSS-MOTION FOR ORDER
UNSEALING ALL DOCUMENTS – 17
(3:12-cv-05537-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

MIL068-0002 6300954

1    For the remaining four documents, there has been no showing of any compelling

2 necessity to prohibit their dissemination when other publicly available documents contain the

3 same information, have been available for decades, and have not led to any terrorist attacks or

4 other damaging explosions.  In fact, the only time in our nation's history when there was a

5 damaging explosion in a naval yard was July 17, 1994 when there was an explosion at the Mare

6 Island Naval Weapons Station in Port Chicago, California while loading munitions onto the *SS*

7 *E. A. Bryan*.  The *Bryan* and the *SS Quinault Victory* were both destroyed, the loading pier and

8 every structure within 1,000 feet were disintegrated, and 320 people were killed.

9 https://www.history.navy.mil/browse-by-topic/wars-conflicts-and-operations/world-war-

10 ii/1944/port-chicago.html.  A naval inquiry ended with the racist implication that the explosion

11 was likely the fault of African-American sailors who were loading munitions onto the *Bryant*.

12 *Id.*  After the explosion, surviving members of the ordnance battalion refused to work unless

13 safety conditions were improved.  Instead of making the safety improvements they requested,

14 208 sailors were court-martialed for mutiny.  *Id.*  Thus, the only entity that has ever blown up

15 a Navy wharf is the United States Navy which accidentally blew up its wharf in Port Chicago,

16 California and then retaliated against those seamen who demanded safety improvements.  This

17 incident, in turn, led to the implementation of far safer procedures for handling explosives by

18 the Explosives Safety Board, an agency commissioned to ensure that no such explosion ever

19 happens again.  And this is the very same Board that recommended *against* the building of the

20 EHW that Plaintiffs warned should not be built.

21    The Plaintiffs are greatly concerned with public safety.  That is why they sought out

22 documents which explain the risks involved when explosive materials are stored and handled

23 at naval facilities.  As scientists continue to recognize, while the risk of detonating nuclear

24 explosives is extremely low, the risks of accidental explosions from other types of explosives

25 remains high, and the risks have not been adequately scientifically studied and ascertained.  See,

26

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO NAVY'S MOTION AND IN SUPPORT OF CROSS-MOTION FOR ORDER UNSEALING ALL DOCUMENTS – 18 (3:12-cv-05537-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

MIL068-0002 6300954

generally, C. Lieber and R. Doherty, Review on the Assessment of Safety and Risks, *Propellants, Explosives, Pyrotechnics*, Vol. 26, pp. 296-301 (2001) ("the most spectacular numbers" of victims from explosive accidents "resulted from unforeseen or unexpected explosions" and it is "likely that the understanding of the nature of [these] explosions is not adequate.") This is why Plaintiffs wish to educate the public about the risks of such catastrophic accidents (and it is also why newspaper reporters like Friedrich of the *Kitsap Sun* writes articles on this subject).

The Navy has not met its "rigorous" burden of proof and has offered only "hypothesis or conjecture" unsupported by any factual data regarding any actual instance of a terrorist attack on a naval wharf. The information in the eleven documents at issue that the Navy wishes to remain sealed has been publicly available for decades. This Court should vacate its order of November 9, 2012 and thereby free the Plaintiffs from any continuing restriction on the dissemination of these documents.

DATED this 3rd day of August, 2020.

s/ James E. Lobsenz
James E. Lobsenz WSBA #8787
Attorneys for Plaintiffs
CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104
Phone:  (206) 622-8020
lobsenz@carneylaw.com


s/ Katherine George
Katherine George WSBA #36288
Attorneys for Plaintiffs
JOHNSTON GEORGE LLP.
2101 4th Avenue Suite 860
Seattle, WA 98121
Phone:  (206) 832-1820
kathy@johnstongeorge.com

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO NAVY'S
MOTION AND IN SUPPORT OF CROSS-MOTION FOR ORDER
UNSEALING ALL DOCUMENTS – 19
(3:12-cv-05537-RBL)

CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

MIL068-0002 6300954

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on this 3rd day of August, 2020, I electronically filed the foregoing

3

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO NAVY'S MOTION AND IN SUPPORT OF CROSS MOTION FOR ORDER UNSEALING ALL DOCUMENTS** with

4

the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

5

6

| | |
|---|---|
| **Luther L. Hajek** | Luke.Hajek@usdoj.gov |
| **Peter K. Dykema** | Peter.Dykema@usdoj.gov |

7

8

DATED this 3rd day of August, 2020.

9

_s/ Deborah A. Groth_

10

Legal Assistant

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO NAVY'S
MOTION AND IN SUPPORT OF CROSS-MOTION FOR ORDER
UNSEALING ALL DOCUMENTS – 20
(3:12-cv-05537-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

MIL068-0002 6300954

# APPENDIX A



# LEVEL

# DAVID W. TAYLOR NAVAL SHIP
# RESEARCH AND DEVELOPMENT CENTER

### Bethesda, Md.   20084

ADA0 58803

ORIGIN AND SUBSEQUENT MODIFICATIONS OF EXPLOSIVE
SAFETY QUANTITY-DISTANCE (ESQD) STANDARDS FOR
MASS DETONATING EXPLOSIVES WITH SPECIAL
REFERENCE TO NAVAL VESSELS

VOLUME I

By

David Freund

SEP 19 1978

E

APPROVED FOR PUBLIC RELEASE:   DISTRIBUTION UNLIMITED

STRUCTURES DEPARTMENT

SHIP PROTECTION DIVISION

DDC FILE COPY.

Final rept.

26 p.

May 78

Enclosure (1) to DTNSRDC
ltr 78-174-151
DTNSRDC/SD-78-4