HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GROUND ZERO CENTER FOR NON-VIOLENT ACTION, et al.,<br><br>Plaintiffs,<br>v.<br><br>UNITED STATES DEPARTMENT OF THE NAVY,<br><br>Defendant. | CASE NO. C12-5537TSZ<br><br>ORDER |

THIS MATTER is before the Court on Plaintiff Ground Zero's Motion for Award of Attorneys' Fees, docket no. 134, under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A).

**I. BACKGROUND.**

The facts of this long-lived case are well known to the Court and the parties. In short: Ground Zero sued in 2012, alleging that Defendant U.S. Navy's Environmental Impact Statement for its proposed second Explosives Handling Wharf at Naval Base Kitsap did not comply with the National Environmental Policy Act (NEPA).

During that litigation, the Navy filed the administrative record in Court. It inadvertently included 11 documents that it claims were protected from disclosure by virtue of their status as

Unclassified Controlled Nuclear Material (UNCI) or Critical Infrastructure Security Information (CISI). The Navy sought and obtained from this Court what the parties have described as a "gag Order," prohibiting Ground Zero and its members from disseminating the 11 inadvertently disclosed documents, because they could threaten national security. *See* docket no. 50. Judge Leighton subsequently granted the Navy's Motion for Summary Judgment and dismissed Ground Zero's claims. Docket nos. 105, 106, and 112.

Ground Zero appealed the dismissal and the Court's prior Orders, including the gag Order. The Ninth Circuit affirmed the dismissal in 2017. *Ground Zero Center for Non-Violent Action v. United States Department of the Navy*, 860 F.3d 1244, 1263 (2017). But it vacated and remanded the Court's gag order, holding that it may have infringed on Ground Zero's First Amendment rights:

> Because the Order in this case raises more serious First Amendment concerns than would a typical protective order affecting only discovery materials, . . . we require a showing of more than good cause to justify it, as courts have done in other cases raising similar First Amendment questions.
>
> * * *
>
> It is not enough that the documents could have been protected from disclosure in the first instance, or that the documents implicate national security" in some vague sense. Any restriction of Ground Zero's public speech at this point must be justified by specific facts showing that disclosure of particular documents would harm national security. Relevant to this assessment will be the fact that the documents are not classified, and the extent to which the information they contain has already been publicly disclosed.

*Ground Zero,* 860 F.3d at 1260, 1262. It instructed this Court to conduct further proceedings to determine whether, under the "compelling reason" standard announced in the Opinion, restrictions on Ground Zero's speech were warranted. *Id.*, docket no. 116 at p. 37.

Almost three years later, the Court realized that the case was still open, and asked the parties whether the dispute over Ground Zero's retention of the documents was ongoing. (Docket

1  no. 119). They confirmed that it was. (Docket no. 120). Three months later, the Navy filed a
2  motion asking the Court to make the specific factual findings the Ninth Circuit held were
3  required before the Navy could prohibit Ground Zero from using the documents however it
4  chose.  (Docket no. 121).

5        This Court declined so make the required findings, primarily because it was undisputed
6  that Ground Zero had independently obtained seven of the 11 documents from other (public)
7  sources, and because the Navy's argument and evidence in support of its proposed additional
8  findings did not differ from the arguments it made in seeking the gag Order in the first instance.
9  (Docket no. 132).

10       The Navy argued that the documents' disclosure "could" implicate national security. But
11 the Ninth Circuit had already explained that something more was required; it had to demonstrate
12 that the dissemination of the documents "*would*" do so. Because the Navy did not meet the
13 burden imposed on it by the Ninth Circuit's Opinion, the Court denied its motion to make
14 additional findings. At the Navy's request, it extended the effective date of the Order so that the
15 Navy could appeal if it chose to do so. (*See,* docket nos. 131 and 132). The Navy did not appeal.

16       Ground Zero now seeks the fees[1] it incurred in litigating and prevailing on its position
17 that it was free to use the 11 inadvertently disclosed UCNI and CISI documents without
18 restriction. It argues that it is the prevailing party on that issue, and that the Navy's position was
19 not substantially justified. It seeks[2] $107,266 in fees reasonably incurred in litigating the issue

---

[1] Ground Zero also seeks fees under Fed. R. Civ. P. 37, based on the Navy's failure to respond to discovery seeking to establish that seven of the documents were obtained from a source other than the Navy's inadvertent disclosure. The fee request on that basis is DENIED, but the Navy's conduct does impact the substantial justification issue, discussed below.

[2] Ground Zero's fee request was updated in the Supplemental Declaration of James Lobsenz, to reflect work on this issue through the Reply. (Docket no. 140).

dating to the Court's gag Order. Alternatively, it seeks $36,675 incurred since the Ninth Circuit's opinion.

The Navy disputes that Ground Zero is the prevailing party, pointing out that the Ninth Circuit affirmed this Court's dismissal of all its claims. It claims prevailing on a "tangential issue" does not entitle a party to fees under the EAJA. It argues that Ground Zero's fee request is untimely. The Navy also argues that its position on the document dispute was and is substantially justified—there was good cause to continue to protect the UNCI and CISI documents from public dissemination. It does not challenge the reasonableness of the rates or the hours Ground Zero's attorneys spent on this issue.

## II. DISCUSSION.

Under the EAJA, a party prevailing on a non-tort claim against the United States is generally entitled to its reasonable attorneys' fees, unless the government's position was substantially justified. 28 U.S.C. § 2412(d)(1)(A) (emphasis added).

**A. Ground Zero's fee request is timely.**

The Navy argues first that Ground Zero's fee request is untimely, as Ninth Circuit's judgment was entered three years ago. But that Opinion vacated the gag Order and remanded for further proceedings consistent with the new, more stringent standard it articulated for restricting Ground Zero's speech. The Opinion put the onus squarely on the Navy to provide specific facts demonstrating that Ground Zero's retention of the documents would threaten national security. Any blame for the three-year delay in the Navy's effort to do so is on the Navy and not on Ground Zero.[3]

---

[3] Nothing prevented the Navy from filing a motion akin to the one it ultimately did file, immediately following the remand. And, even after the Court asked about the status, the Navy waited three months to file its motion. (Docket nos. 119 and 121).

Had the Navy met its burden, Ground Zero would not have been the prevailing party on this issue—a determination that could not have been made prior to this recent Court's ruling on it. Ground Zero's Motion is timely.

**B. Ground Zero is the prevailing party on the remanded issue.**

Ground Zero accurately argues that a prevailing party is "one who has been awarded some relief by a court." *Buckhannon v. West Virginia Dept. of Health & Human Resources*, 532 U.S. 598, 603 (2001); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (plaintiffs are the prevailing parties "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.").

It is true that Ground Zero did not prevail on the NEPA claims in its complaint, but the Navy's claim that prevailing on a "collateral issue" is not enough under the EAJA is not correct. Ground Zero appealed the Court's gag Order as an unconstitutional restriction on its speech, and it prevailed on that issue, in the Ninth Circuit and ultimately in this Court. Because the Navy did not appeal, Ground Zero's victory on this important, if not central, issue is final. *See Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 790 (1989) (citing *Hensley* at 433) ("[T]he degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all.").

Ground Zero does not seek fees for the claims it lost, and the Navy does not contend the fees it does seek are unreasonable. Ground Zero is the prevailing party on the First Amendment issue, for purposes of its EAJA fee request.

**C. The Navy's position after remand was not substantially justified.**

A substantially justified position is one that "a reasonable person could think is correct, that is, if it has a reasonable basis in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 566 n.2

1  (1988). The position does not need to be "justified to a high degree." *Id*. at 565. The fact that
2  plaintiff prevailed in court "does not raise a presumption that [the government's] position was
3  not substantially justified." *Kali v. Bowen*, 854 F.2d 329, 334 (9th Cir. 1988).

4        The Navy's position on the First Amendment issue was substantially justified prior to the
5  Ninth Circuit's Opinion. It demonstrated to the Court there was good cause for entering a gag
6  Order precluding Ground Zero from disseminating UNCI and CISI material that could implicate
7  national security, even if the information was available elsewhere. The Ninth Circuit announced
8  a new, more stringent standard for the imposition of such a speech restriction, which neither the
9  Navy nor the Court could have anticipated at the time the Order was entered.

10       But the Navy has not demonstrated that its position on the documents was substantially
11 justified after that Opinion. It did not provide the specific evidence the Ninth Circuit instructed it
12 to produce in support of its effort to restrict Ground Zero's First Amendment rights. The Ninth
13 Circuit explained that Ground Zero had the right to discuss and distribute documents obtained
14 elsewhere:

> Ground Zero may discuss and distribute the documents in question so long as it acquires the documents from a source not involved in this litigation. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) (permitting dissemination of information identical to that subject to a protective order so long as the "information is gained through means independent of the court's processes"). It may do so even if the independent source originally obtained the documents from Ground Zero, so long as Ground Zero disseminated them before the district court entered the sealing order.

*Ground Zero,* 860 F.3d at 1258. Ground Zero consistently claimed that seven of the documents fell under this rule, and it sought the Navy's admission that that was true. The Navy did not respond, instead seeking a Protective Order, docket no. 125, claiming that discovery was not appropriate in an Administrative Procedure Act case—which the NEPA case clearly was, but the First Amendment issue clearly was not. The Court denied the Navy's motion, docket no. 132,